UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| BRONX INDEPENDENT LIVING SERVICES, a nonprofit organization, RODOLFO DIAZ, BRETT EISENBERG, and ANTONIA AYALA, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>-against-<br><br>UNION COMMUNITY HEALTH CENTER, INC., and ST. BARNABAS HOSPITAL, d/b/a SBH Health System, New York corporations,<br><br>                    Defendants. | Case No.<br><br><br>**COMPLAINT** |

## INTRODUCTION

1.      This civil rights class action challenges Union Community Health Center ("UCHC")'s  and St. Barnabas Hospital ("St. Barnabas")'s failure to provide persons with physical disabilities, vision impairments and hearing disabilities full and equal access to the wide range of health care services available at their health care facility located at 2021 Grand Concourse in the Bronx ("UCHC 2021").

2.      UCHC 2021 purports to be a full-service medical and dental health clinic that centers its approach to health care around the individual patient, and, by all accounts, it does play a critical role in providing health care services to non-disabled residents of this community. Yet, nearly twenty-five years to the day after the passage of the Americans with Disabilities Act, UCHC is still turning away many patients with disabilities and providing inferior care and treatment to those who make it in the door.

3.      UCHC 2021 is riddled with physical access barriers that prevent persons who use wheelchairs and other patients and prospective patients with physical disabilities from seeking

-1-

and receving adequate care at its faciliites.  These barriers include outside  entrance doors that are too heavy for wheelchair users to open them independently; doorways throughout the facility that are too narrow for safe and independent passage by wheelchair users; an onsite pharmacy only reachable by climbing a flight of stairs; reception desks that are too high for wheelchair users to be easily seen or have face-to-face interactions with staff; paths of travel throughout the facility that are too narrow for wheelchair users to navigate; and a lack of accessible medical equipment, such as adjustable height examination tables that can prevent serious injuries to persons with mobility impairments. Indeed, UCHC staff tell prospective patients who use wheelchairs that they cannot seek medical care at UCHC on their own without the assistance of non-disabled companions.

4.     UCHC also fails to provide sign language interpreters for deaf patients, fails to have a publicly available reasonable accommodations policy, and fails to make its written materials available in alternate formats for blind and low-vision patients.

5.     By failing to make its programs and services accessible to patients with disabilities,UCHC perpetuates a two-tiered system of health care, whereby people with disabilities receive substandard, inferior medical treatment, which jeopardizes their health and well-being.

6.     UCHC 2021's ongoing practice of systemic discrimination denies Plaintiffs and members of the class their rights under federal, state, and city statutes, including the "full and equal enjoyment" guarantee of Title III of the Americans with Disabilities Act ("ADA"); the "program access" requirement under Section 504 of the Rehabilitation Act ("Rehabilitation Act"), and Defendants' obligations under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL").

7.     Plaintiff BILS informed UCHC of the barriers at the facility for those with disabilities on several occasions starting in 2010.  Then, in May 2014 and again in March 2015, Plaintiffs and their counsel formally informed UCHC that the ongoing barriers were violations of federal, state and New York City disability rights laws.  To date, UCHC has failed to make a commitment to remedy the violations.

## JURISDICTION

8.     This is an action for declaratory and injunctive relief brought pursuant to Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq.*; Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794, *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290, *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101, *et seq.* This Court has subject matter jurisdiction over the Rehabilitation Act and ADA claims pursuant to 28 U.S.C. §§ 1331 and 1343 and supplemental jurisdiction over the NYSHRL and NYCHRL claims pursuant to 28 U.S.C. § 1367.

9.     This Court has jurisdiction to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## VENUE

10.     Pursuant to 28 U.S.C. § 1391(b), venue is proper in this District. Defendants are located within this District and a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District.

## PARTIES

11.     Organizational Plaintiff Bronx Independent Living Services ("BILS") is an independent living center located at 4419 Third Avenue, Bronx, New York. Founded in 1983,

BILS is a consumer-based, non-profit organization, providing services and advocacy for independent living for individuals with disabilities. BILS' mission is to ensure full integration, independence, and equal opportunity for all people with disabilities by removing barriers to the social, economic, cultural, and civic life of the community.  Approximately sixty percent of BILS' board members and approximately eighty percent of BILS' staff are persons with disabilities. Approximately half the staff lives near the office in the Bronx. BILS' constituents include persons with mobility, vision and hearing disabilities who would access the services of UCHC 2021 if they were accessible to persons with disabilities.

13.     BILS is dedicated to guaranteeing the civil rights of people with disabilities. BILS seeks to improve the quality of life of Bronx residents with disabilities through programs that empower them to gain greater control of their lives and achieve full and equal integration into society. BILS accomplishes this goal through its services; its advocacy for systems changes to remove physical, attitudinal and communicational barriers to people with disabilities; and through its education and awareness programs. Accordingly, the interests that BILS seeks to protect through this litigation are germane to its mission and purpose.

13.     BILS has expended substantial time and resources on advocacy work concerning accessibility at UCHC 2021, including time spent investigating complaints and concerns about the accessibility of UCHC for BILS' constituents.

14.     BILS continues today to advocate for health care access for persons with disabilities in the Bronx through education and outreach to the disability community.

15.     Plaintiff Rodolfo Diaz (Diaz) resides in the Bronx, New York. He has hydrocephalus, scoliosis, and spina bifida, and he uses a wheelchair for mobility. He is a qualified individual with a disability within the meaning of all applicable statutes. Mr. Diaz is a

4

constituent and an employee of Bronx Independent Living Services. Mr. Diaz would use the healthcare services of UCHC 2021 if such services were made accessible to him.

16.     Plaintiff Brett Eisenberg resides in the Bronx, New York. Mr. Eisenberg is the Executive Director of BILS. He has osteogenesis imperfecta and uses a wheelchair for mobility. Mr. Eisenberg also has low vision and is a person of short stature. He is a qualified individual with a disability within the meaning of all applicable statutes. He is also a constituent of Bronx Independent Living Services. Mr. Eisenberg would use the healthcare services of UCHC 2021 if such services were made accessible to him.

17.     Plaintiff Antonia Ayala resides in the Bronx and is a constituent and employee of Bronx Independent Living Services. Ms. Ayala is hard-of-hearing and uses American Sign Language to communicate. She is a qualified individual with a disability within the meaning of all applicable statutes.  Ms. Ayala would use the healthcare services of UCHC 2021 if such services were made accessible to her.

18.     Defendant UCHC is a private, not-for-profit corporation incorporated in New York that operates four medical facilities in the Bronx. UCHC is a recipient of federal financial assistance.

19.     UCHC 2021 provides comprehensive primary medical care; specialty medical care such as gynecology, dermatology, podiatry, and ophthalmology; rapid after-hours walk-in care for illnesses and injuries; dental services; behavioral health services; and physical and occupational therapy. The facility serves approximately 90,000 patients each year.

20.     Defendant St. Barnabas Hospital ("St. Barnabas"), d/b/a SBH Health System, is a private, not-for-profit corporation incorporated in New York in 1951. It is located at 4422 Third

Avenue, Bronx, New York. St. Barnabas is a 461-bed, acute care community hospital and a Level 1 trauma center. St. Barnabas is a recipient of federal financial assistance.

21.     St. Barnabas has substantially funded UCHC 2021's operating costs and has provided it with management and staff support.

22.     St. Barnabas also operates facilities on several floors of the 2021 Grand Concourse building.

23.     In 2006, UCHC began to operate as a stand-alone entity. Nevertheless, St. Barnabas continues to provide funding and services to UCHC. According to its financial statements, St. Barnabas has provided UCHC with services valued at more than $38 million in the last 15 years, including $19 million between 2000 and 2006, and $17 million between 2006 and 2011.

24.     Due to the nature of the relationship between St. Barnabas and UCHC, and the degree of control St. Barnabas has exercised over UCHC and its UCHC 2021 facilities. St. Barnabas is also legally liable for the violations alleged herein.

## PLAINTIFFS' ALLEGATIONS

### A.     Physical Access Barriers at UCHC 2021

25.     Defendants  have failed to remedy physical access barriers for people with mobility disabilities throughout the UCHC 2021 facility, thereby denying persons who use wheelchairs and others with physical or mobility disabilities full and equal access to the healthcare services, programs and facilities offered at UCHC 2021.

26.     For instance, the outer doors to the UCHC 2021 facility are so heavy that individuals with disabilities struggle to open them and there is not an automatic door opener.

27.     The facility also contains multiple doorways that are too narrow for  wheelchair users to fit through safely and independently.

6

28.     The UCHC 2021 facility also contains a pharmacy that patients can only enter by ascending a flight of stairs. Although a sign next to the staircase directs wheelchair users to press a button for assistance, the button is too high for a wheelchair user to reach.

29.     Reception desks at UCHC 2021 are too high for wheelchair users to see over and interact with Health Center staff in a face-to-face manner.

30.     Many paths of travel at UCHC 2021 are so narrow that a wheelchair user would have difficulty maneuvering through them to reach different parts of the facility.

31.     UCHC 2021 does not have sufficient wheelchair-accessible bathrooms located in the same area and on the same floor as existing inaccessible bathrooms. Instead, its designated accessible bathrooms are spread out on every other floor.  Thus, the floors for rapid care, dental services, and behavioral health services have no accessible bathrooms. Some bathrooms have signs indicating that they are wheelchair-accessible, but actually are not.

32.     UCHC 2021 lacks sufficient adjustable-height examination tables and other accessible medical equipment, which can prevent people with disabilities from being properly and safely weighed, examined, and/or accurately diagnosed.

**B.**     **Failure to Provide Effective Communication for Patients with Hearing Disabilities**

33.     Defendants lack sufficient policies and procedures to provide effective communication to patients with hearing disabilities and fail to provide effective auxiliary aids to facilitiate such communication. For example, UCHC 2021 fails to offer or provide live sign-language interpreters for those who are Deaf or have hearing loss. Rather, UCHC applies a "one-size-fits-all" approach to Deaf and hard-of-hearing patients, providing only video remote interpreting (VRI) to communicate with such patients about their medical treatment, regardless of whether VRI can provide effective communication to the individual patient based on the specific circumstances of the patient or of her health care treatment at that day and time.  VRI is

a videoconferencing service that can connect deaf individuals to off-site sign language interpreters – so long as a dedicated high-speed internet connection is available.

34.     UCHC 2021 also fails to accommodate persons with hearing loss who do not use sign languages. The facility does not have any hearing loop systems, which allow persons with hearing loss to hear when the speaker is more than a few feet away. Without a hearing loop system, persons with hearing loss have greater difficulty hearing others and understanding their medical treatment.

35.     UCHC 2021 does not display any signage informing patients with hearing disabilities of what steps they should take to request an interpreter or any other auxiliary aids.

**C.     Failure to Provide Written Materials in Alternate, Accessible Formats**

36.     UCHC 2021 fails to offer or provide any written materials such as intake forms and discharge instructions in large print, Braille, audio CD, electronic formats, or other alternative formats for blind or low vision patients.

37.     Instead of offering written materials in alternative formats, UCHC 2021 staff members read the documents aloud to patients with vision disabilities in a public area. Thus, a blind or low vision patient must disclose her health care information to strangers in the waiting room, while sighted patients can independently fill out forms and keep their health information private.

**D.     Failure to Provide Information to the Public About the Accessibility of Its Facilities, or Available Accommodations for Persons with Disabilities**

38.     UCHC 2021 does not display any signs informing patients how to request accommodations.

39.     Nor does UCHC 2021 provide any signage identifying accessible routes or alternate accessible facilities.

40.     Furthermore, UCHC 2021 does not include on its website information stating that accommodations are available for patients with disabilities, information about procedures for requesting disability-related accommodations, information about which areas of its facilities are accessible for wheelchair users and other persosn with physical disabilities, or any information about how to request auxiliary aids or materials in alternate accessible formats.

**E.     Failure to Train Staff**

41.     UCHC 2021 fails to adequately train staff and contractors regarding their obligations toward patients with disabilities. For instance, according to BILS consumers who attempted to make appointments at UCHC 2021, Health Center staff inform patients with disabilities that the facility is not accessible to persons with disabilities and that they should seek health care at other facilities far distances away in the Bronx. When asked, UCHC 2021 staff did not know what accommodations UCHC provides for patients with mobility, vision, or hearing disabilities.  Additionally, to the extent UCHC 2021 has accessible medical equipment, UCHC staff does no know how to operate it.

**F.     Harm to Plaintiff BILS and its Constituents**

42.     BILS is directly harmed by Defendants' failure to ensure that their facilities and programs at UCHC 2021 are accessible to people with disabilities.  BILS has had to expend resources advocating for constituents who are harmed, at risk of being harmed, or deterred from health access altogether by policies and practices resulting in unequal access to health care at UCHC 2021.  As a result of discriminatory policies and practices at UCHC 2021, BILS has fewer resources to dedicate to its other programs. This injury to BILS is ongoing and would be directly redressed by injunctive and declaratory relief.

43.     BILS also serves between 1,600 and 1,800 consumers a year. These consumers include individuals with disabilities who have encountered barriers or are at risk of encountering

barriers at UCHC 2021 as well as those who have been deterred from using UCHC 2021 due to its admitted inaccessibility.  Thus, one or more of BILS' constituents have been injured as a direct result of Defendants' discriminatory policies and practices and would have standing to sue in their own right.

44.     BILS can bring this action on behalf of itself and its constituents because the interests at stake are germane to BILS' purpose. Plaintiffs' claims are limited to injunctive and declaratory relief which do not require the participation of individual constituents in the lawsuit.

**G.     Harm to Plaintiff Diaz**

45.     Plaintiff Rodolfo Diaz is a supportive housing and benefit advisement specialist with BILS. Mr. Diaz utilizes a wheelchair as a mobility aid. His job duties require him to travel throughout the Bronx to meet with consumers and provide them with information, resources, and assistance to obtain accessible housing and public benefits.

46.     The UCHC 2021 facility is less than one mile away from Bronx Independent Living Services.

47.     Mr. Diaz visited the UCHC 2021 facility in October 2014. When he arrived, he encountered multiple physical barriers.

48.     Many of the doorways and paths of travel at UCHC 2021 are too narrow for Mr. Diaz to navigate without difficulty.

49.     When he reached the fifth floor reception area for primary care, the reception desk was too high for him to interact at eye level with the staff person on the other side. Thus, Mr. Diaz could not make eye contact with the person he was speaking to.

50.     Mr. Diaz asked the receptionist whether the primary care center would accommodate patients using wheelchairs. The receptionist informed him that UCHC would not

permit him to seek medical care there on his own. Instead, he would have to bring a non-disabled companion to assist him.

51.     UCHC 2021 staff provided Mr. Diaz no information about what accommodations UCHC would provide for him if he became a patient there.

52.     Mr. Diaz left UCHC 2021 feeling upset and frustrated about the obstacles preventing him from obtaining medical care independently.

53.     Mr. Diaz would seek medical care at UCHC 2021 if the  facility was wheelchair-accessible and provided accommodations for his disabilities.

**H.     Harm to Plaintiff Eisenberg**

54.     Plaintiff Brett Eisenberg is the Executive Director of Bronx Independent Living Services. Mr. Eisenberg has brittle bones, other physical disabilities, and low vision. For healthcare visits, Mr. Eisenberg requires an adjustable-height examination table. Although he can stand for short periods of time, his brittle bones and low vision make climbing onto a fixed-height examination table particularly dangerous because he may suffer serious injury while climbing onto the table. Because of his low vision, Mr. Eisenberg needs access to large-print intake and patient information forms. When large-print forms are not available, he may not correctly understand the forms or know which areas are designated for him to write in his medical information. Thus, he may provide incorrect information or neglect to provide critical medical information entirely because he cannot understand the forms, compromising the quality of his health care. He also may not be able to read any written after-care instructions. As a result, he may not understand instructions from his doctor about what actions to take after an appointment, and his health may deteriorate.

55.     In his professional capacity at BILS, Mr. Eisenberg visited UCHC 2021 twice to assess its accessibility for persons with disabilities.

56.     Moreover, Mr. Eisenberg is currently seeking a primary care doctor and a general dentist.  UCHC 2021 is an attractive facility to him because it is less than a mile from his workplace and provides comprehensive medical and dental care.

57.     Based upon his experience visiting the facility and his knowledge of the experiences of potential patients, however, Mr. Eisenberg believes he will either be turned away from UCHC 2021 or will receive substandard care due to his disabilities. Thus, he is deterred from making appointments at UCHC 2021.

58.     The reception desks at UCHC 2021 are too high for Mr. Eisenberg to see over or to have a face-to-face interaction. He does not know how he would get the attention of the receptionist to check in for an appointment, unless he stretches up as far as he can in his wheelchair and waves his arms around. Mr. Eisenberg would feel humiliated if he had to seek attention from UCHC 2021 staff in such a manner.

59.     Mr. Eisenberg is concerned about whether UCHC 2021 staff are adequately trained to use any accessible medical equipment that they do have.  On one occasion, UCHC 2021 staff attempted to show Mr. Eisenberg a height-adjustable chair, but they were unable to operate the chair.  Mr Eisenberg is concerned about being in a height-adjustable examination chair or table that staff do not know how to operate and facing the risk of being be jostled and falling, leading to broken bones or other catastrophic injuries.

60.     The fifth-floor bathroom at UCHC 2021 is difficult for Mr. Eisenberg to use because the lavatory protrudes so far from the wall that he would not be able to reach the soap dispenser and wash his hands after using the toilet.

61.     Many of the doorways and paths of travel at UCHC 2021 are too narrow for Mr. Eisenberg to navigate without difficulty.

12

62.     If UCHC 2021 staff were better trained to treat patients with disabilities, and if he had to face fewer barriers to access health care at the clinic, Mr. Eisenberg would seek health care at UCHC 2021.

**I.      Harm to Plaintiff Ayala**

63.     Plaintiff Antonia Ayala is a Deaf Victims Specialist at BILS. Ms. Ayala is hard-of-hearing and requires an in-person sign language interpreter for effective communication when she visits a healthcare provider.

64.     Ms. Ayala traveled to UCHC 2021 in July 2015 as a walk-in patient.

65.     When Ms. Ayala reached the check-in desk on the fifth floor, she requested a sign-language interpreter.

66.     Front desk staff at UCHC 2021 informed Ms. Ayala that UCHC 2021 uses video remote interpreting (VRI) to communicate with patients with hearing disabilities.

67.     Ms. Ayala asked whether UCHC 2021 could call an interpreting agency that would provide a sign language interpreter to help her communicate during her doctor's appointment.

68.     The receptionist told Ms. Ayala that UCHC 2021 did not provide live interpreters and that she should use the VRI machine to communicate with medical staff during her appointment instead.

69.     UCHC 2021 staff further informed Ms. Ayala that they would not call a live interpreter in an emergency situation.

70.     Ms. Ayala avoids going to medical practices that rely exclusively on VRI instead of offering live interpreters to deaf patients. In her experience, VRI does not facilitate effective communication because problems relating to internet connectivity – such as frozen screens or lagging images—arise frequently, rendering it unreliable. Ms. Ayala has also struggled to

communicate using VRI because medical staff are typically not trained to use it effectively. As a result, she often only comprehends bits and pieces of information communicated through VRI. Thus, Ms. Ayala is concerned that she will not fully understand her medical treatment if she makes an appointment at a facility that only offers VRI services.

71.     Ms. Ayala felt frustrated and scared after her attempt to seek medical care at UCHC 2021. She worries that if she suddenly got sick and needed to go to UCHC 2021 for treatment, the VRI machine would malfunction and she would not be able to understand anything going on.

72.     Because UCHC is located near the BILS offices, Ms. Ayala could go there for medical appointments or walk-in care on the days when she works in the BILS offices if UCHC 2021 was prepared to effectively accommodate her disability.

73.     Ms. Ayala would return to UCHC 2021 for medical care if the staff was properly trained and the facility offered live interpreters who use sign language to communicate.

## **CLASS ACTION ALLEGATIONS**

74.     Plaintiffs bring this action for injunctive and declaratory relief on their own behalf and on behalf of all persons similarly situated pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiffs seek to represent a class that consists of persons with mobility, hearing, and vision disabilities who have been and/or are being denied the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations and programs or activities of Defendants.

75.     Plaintiffs allege that the proposed class consists of thousands of people with disabilities living in the Bronx and surrounding areas. The proposed class is so numerous that

joinder of all such persons is impracticable. The disposition of their claims in a class action is a benefit to the parties and to the Court.

76.     There is a well-defined community of interest in the questions of law and fact involved and affecting Plaintiffs in that they are being denied equal access to Defendants' facilities, services, and/or programs.

77.     There are questions of law and fact common to all class members that include, but are not limited to:

(1) Whether Defendants have failed to assess all existing architectural and physical access barriers at UCHC 2021 and to develop and implement a plan to remove those barriers, where barrier removal is readily achievable.

(2) Whether Defendants have failed to make reasonable modifications to policies, practices, and procedures in a manner that deprives individuals with disabilities of full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations available to non-disabled patients at UCHC 2021.

(3) Whether Defendants have failed to take the steps necessary to ensure that individuals with disabilities are not provided inferior healthcare services or denied such services due to the absence of auxiliary aids and services.

(4) Whether Defendants' failure to provide medical equipment that is accessible to individuals with disabilities excludes, denies or otherwise causes such individuals to be treated differently, and as a result deprives individuals with disabilities of full and equal enjoyment of Defendants' health care services.

(5) Whether Defendants have denied Plaintiffs and the proposed class "meaningful access" to its programs or activities in violation of the Rehabilitation Act.

78.     The common questions raised by Plaintiffs are capable of class-wide resolution. Claims substantially similar to the claims raised here have been resolved in court-approved class action settlements against other health care providers and hospitals.

79.     Plaintiffs' claims are typical of the claims of all members of the class because they arise from the same course of conduct by Defendants. Defendants have acted and continue to act on grounds generally applicable to all class members, thereby making final declaratory and injunctive relief appropriate to the class as a whole. The form and scope of the injunctive and declaratory relief sought is common to all members of the class.

80.     Plaintiffs are adequate representatives because they are directly impacted by Defendants' failure to provide full and equal access to their facilities, services, and programs. The interests of the named Plaintiffs are not antagonistic to, or in conflict with, the interests of the class as a whole. The attorneys representing the class are experienced in representing clients in class action litigation involving civil rights claims.

### FIRST CAUSE OF ACTION
**Violation of the Americans with Disabilities Act**

81.     Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of this Complaint.

82.     Title III of the Americans with Disabilities Act ("ADA") prohibits discrimination against people with disabilities "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

83.     Defendants' facilities, including UCHC 2021, are places of public accommodation. 42 U.S.C. § 12181(7)(F); 28 C.F.R. § 36.104 ("Public accommodation"

includes a "professional office of a health care provider, hospital, or other service establishment.").

84.     Defendants have discriminated against Plaintiffs, constituents of organizational Plaintiff BILS, and members of the class by denying them the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of the facilities owned, operated, or contracted for usage by Defendants at UCHC 2021. 42 U.S.C. § 12182(b)(1)(A)(i).

85.     Defendants have discriminated against Plaintiffs, constituents of organizational Plaintiff BILS, and members of the class by affording them the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of the facilities owned, operated, or contracted for usage by Defendants at UCHC 2021 in a manner that is not equal to that afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

86.     Defendants have discriminated against Plaintiffs, constituents of organizational Plaintiff BILS, and members of the class by providing goods, services, facilities, privileges, advantages, or accommodations that are different or separate from that provided to other individuals. 42 U.S.C. § 12182(b)(1)(A)(iii).

87.     Defendants have discriminated against Plaintiffs, constituents of organizational Plaintiff BILS, and members of the class by failing to provide goods, services, facilities, privileges, advantages, or accommodations in the most integrated setting appropriate. 42 U.S.C. § 12182(b)(1)(B).

88.     Defendants have discriminated against Plaintiffs, constituents of organizational Plaintiff BILS, and members of the class by imposing or applying eligibility criteria that screens

out or tends to screen out individuals with disabilities from enjoying Defendants' goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(b)(1)(2)(A)(i).

89.     Defendants have discriminated and continue to discriminate against Plaintiffs, constituents of organizational Plaintiff BILS, and members of the class by failing to modify their policies, procedures, and practices in a reasonable manner, when such modifications are necessary to ensure equal access for individuals with physical disabilities. 42 U.S.C. § 12182(b)(1)(2)(A)(ii).

90.     Defendants have discriminated and continue to discriminate against Plaintiffs, constituents of organizational Plaintiff BILS, and members of the class by failing to provide necessary auxiliary aids and services at facilities where provision of such auxiliary services does not create an undue burden and would not fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation offered by Defendants. 42 U.S.C. § 12182(b)(1)(2)(A)(iii).

91.     Defendants have discriminated and continue to discriminate against Plaintiffs, constituents of organizational Plaintiff BILS, and members of the class by failing to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(1)(2)(A)(iv).

92.     Defendants have discriminated and continue to discriminate against Plaintiffs, constituents of organizational Plaintiff BILS, and members of the class by failing to design and construct facilities that are readily accessible to and usable by individuals with disabilities and by failing to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(1)-(2).

93.     Each individual Plaintiff and class member is an individual with a disability within the meaning of the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36. Each has an impairment that substantially limits the major life activity of walking, seeing, and/or hearing. 42 U.S.C. § 12102; 28 C.F.R. § 36.104.

94.     All constituents of organizational Plaintiff BILS are individuals with disabiltiies within the meaning of the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36. Each has an impairment that substantially limits the major life activity of walking, seeing, and/or hearing. 42 U.S.C. § 12102; 28 C.F.R. § 36.104.

95.     Defendants' conduct constitutes ongoing and continuous violations of the ADA. Unless restrained from doing so, Defendants will continue to violate the law. Through their conduct, Defendants have caused and will continue to cause Plaintiffs immediate and irreparable injury.

96.     Plaintiffs are entitled to injunctive relief and reasonable attorneys' fees and costs. 42 U.S.C. § 12188.

WHEREFORE, Plaintiffs request relief as set forth below.

### SECOND CAUSE OF ACTION
### Violation of Section 504 of the Rehabilitation Act

97.     Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of the Complaint.

98.     Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the regulations promulgated thereunder, prohibit discrimination against people with disabilities by recipients of federal funding. Section 504 provides, in pertinent part, that:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to

discrimination under any program or activity receiving Federal
financial assistance . . . .

99.    Section 504 defines "[p]rogram or activity" in part as "an entire corporation,
partnership, or other private organization, or an entire sole proprietorship . . . which is principally
engaged in the business of providing . . . health care." 29 U.S.C. § 794(b)(3)(A)(ii).

100.    Defendants have received federal financial assistance at all relevant times.

101.    Through the acts and omissions alleged herein, Defendants have, solely because
of Plaintiffs' disabilities, excluded Plaintiffs from participation in Defendants' programs and
activities and denied Plaintiffs the benefits of Defendants' programs and activities, and subjected
Plaintiffs to discrimination in violation of 29 U.S.C. § 794, *et. seq.* and the regulations
promulgated thereunder.

102.    Defendants' acts and omissions described herein violate the equal access and
nondiscrimination provisions of Section 504 and the regulations promulgated thereunder, and
have resulted in injury to Plaintiffs.

103.    As a proximate result of Defendants' violations of Section 504, Plaintiffs,
constituents of organizational Plaintiff BILS, and members of the class have been injured, and
continue to be injured, as set forth herein. This conduct, unless enjoined, will continue to inflict
injuries for which Plaintiffs and the class have no adequate remedy at law.

104.    Plaintiffs and the class are entitled to injunctive relief and reasonable attorneys'
fees, expenses, and costs, pursuant to 29 U.S.C § 794a.

WHEREFORE, Plaintiffs pray for relief as set forth below.

### THIRD CAUSE OF ACTION
### Violation of the New York State Human Rights Law

105.    Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of the
Complaint.

106.     The New York State Human Rights Law ("NYSHRL") provides that, "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of the . . . disability . . . of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof." N.Y. Exec. Law § 296(2)(a).

107.     The term "place of public accommodation" in the NYSHRL includes "dispensaries, clinics, [and] hospitals." including UCHC 2021.  N.Y. Exec. Law § 296.9.

108.     "Discriminatory practice" is defined in the NYSHRL to include:

(1) a refusal to make reasonable modification in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations;

(2) a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation begin offered or would result in undue burden;

(3) a refusal to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities . . . where such removal is readily achievable; and

(4)  where such person can demonstrate that the removal of a barrier under

subparagraph (iii) of this paragraph is not readily achievable, a failure to make

such facilities, privileges, advantages or accommodations available through

alternative methods if such methods are readily achievable.

N.Y. Exec. Law § 296.2(c)(i)-(iv).

109.    By the conduct described above, Defendants have committed unlawful

discriminatory practices against Plaintiffs and, have violated the New York State Human Rights

Law.

110.    Defendants' conduct constitutes an ongoing and continuous violation of the

NYCHRL and, unless restrained from doing so, Defendants will continue to violate said law.

This conduct, unless enjoined, will continue to inflict injuries and Plaintiffs will suffer

irreparable harm in that they will continue to be discriminated against and denied the

accommodations, advantages, facilities or privileges of the programs and services provided by

UCHC 2021 as well as reasonable accommodations which would provide the opportunity to

benefit from these programs and services.

111.    Defendants' discriminatory conduct is ongoing, and consequently, Plaintiffs are

entitled to injunctive relief and reasonable attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**Violation of the New York City Human Rights Law**

112.    Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of the

Complaint.

113.    The New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-

107(4)(a) provides, "It shall be an unlawful discriminatory practice for any person, being the

owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider

of public accommodation because of the actual or perceived . . . disability . . . of any person

directly or indirectly, to refuse, withhold from or deny to such person the accommodations,

advantages, facilities, or privileges thereof . . . ."

114.    The NYCHRL defines the term "place or provider of public accommodation" to

include "providers, whether licensed or unlicensed, of goods, services, facilities,

accommodations, advantages or privileges of any kind, and places, whether licensed or

unlicensed, where goods, services, facilities, accommodations, advantages or privileges of any

kinds are extended, offered, sold or otherwise made available." NYCHRL § 8-102(9). As such,

UCHC 2021 is a covered place or provider of public accommodation under the NYCHRL.

115.    By the acts and conduct described above, Defendants have committed unlawful

discriminatory practices against Plaintiffs and violated the New York City Human Rights Law.

116.    Defendants' conduct constitutes an ongoing and continuous violation of the

NYCHRL and, unless restrained from doing so, Defendants will continue to violate said law.

This conduct, unless enjoined, will continue to inflict injuries for which Plaintiffs have no

adequate remedy at law. Plaintiffs will suffer irreparable harm in that they will continue to be

discriminated against and denied the accommodations, advantages, facilities or privileges of the

programs and services provided by UCHC 2021 as well as reasonable accommodations which

would provide the opportunity to benefit from these programs and services.

117.    Defendants' discriminatory conduct is ongoing, and consequently, Plaintiffs are

entitled to injunctive relief and reasonable attorneys' fees and costs.

### FIFTH CAUSE OF ACTION
**Declaratory Relief**

118.    Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of the

Complaint.

119.     Plaintiffs contend, and are informed and believe, that Defendants deny failing to comply with applicable laws prohibiting discrimination against persons with disabilities in violation of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the Human Rights Laws of New York State and New York City.

120.     A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf, and on behalf of the class, pray for the following relief against Defendants:

121.     That this matter be certified as a class action with the class defined as set forth above, that Plaintiffs be appointed class representatives, and their attorneys be appointed class counsel;

122.     That Defendants be enjoined from violating the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the Human Rights Laws of New York State and New York City;

123.     For an Order finding and declaring that Defendants' acts, omissions, policies, and practices as challenged herein are unlawful;

124.     For an award of Plaintiffs' reasonable attorneys' fees and costs; and

125.     For such other relief that the Court may deem just and proper.


Dated:  July 29, 2015                    Respectfully submitted,
        New York, New York

                                         DISABILITY RIGHTS ADVOCATES

_____
Michelle A. Caiola (MC2110)
Rebecca J. Rodgers (RR1349)
DISABILITY RIGHTS ADVOCATES
40 Worth Street, Tenth Floor
New York, NY 10013
Tel:  (212) 644-8644
Fax:  (212) 644-8636
TTY:  (877) 603-4579
*Attorneys for Plaintiffs*